# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TARA JEAN VAUGHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21cv960 |
| | ) | |
| TRACY NORWOOD and WASI HAQ, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND RECOMMENDATION</u>
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant Tracy Norwood's Motion to Dismiss" (Docket Entry 28)[1] and "Defendant Dr. Wasi Haq's Motion to Dismiss" (Docket Entry 30) (collectively, the "Motions"). For the reasons that follow, the Court should deny the Motions.

## <u>BACKGROUND</u>

Alleging deliberate indifference to her medical needs during her incarceration at the Guilford County Detention Center in October 2019, Plaintiff initiated a pro se suit under 42 U.S.C. § 1983. (<u>See</u> Docket Entry 2 (the "Complaint") at 1-5.)[2] The Complaint identified the medical provider involved in the alleged incident as "Doctor Green" (<u>see, e.g., id.</u> at 1-2; <u>see also</u> Docket

---

[1] For legibility reasons, this Opinion uses standardized spelling and capitalization in all quotations from the parties' materials.

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

Entry 6 at 1-2 (revising spelling to "Dr. Greene")); however, when the United States Marshals Service attempted to effectuate service on Dr. Greene, the "lawyer for Guilford County Jail . . . had no record of Dr. Greene working or as a contractor" (Docket Entry 14 at 1). Given the circumstances, the Court directed the Clerk to "attempt to locate counsel willing to represent Plaintiff without compensation . . . at least for the limited purpose of properly identifying and obtaining service of process on Defendant 'Dr. Greene' (including through the use of targeted discovery, if necessary)." (Text Order dated Aug. 3, 2022.) A pro bono attorney thereafter entered a "limited appearance in this civil action" (Docket Entry 15 at 1), "for the limited purpose of assisting the [p]laintiff in properly identifying and obtaining service of process upon the [d]efendant, 'Dr. Greene'" (id.).

According to the pro bono attorney's subsequent status report:

> [He] served a Document Subpoena on the Sheriff of Guilford County, North Carolina, seeking records concerning [Plaintiff] maintained by the Guilford County Sheriff's Office and/or the Guilford County Detention Center, together with all records showing any medical care or treatment provided to or received by [Plaintiff] during the periods in which she was incarcerated in the Guilford County Detention Center and, to the extent encompassed by those requests, records sufficient to identify all physicians, nurses, and other medical personnel who provided services or treatment to inmates at the Guilford County Detention Center during the periods in which [Plaintiff] was incarcerated there.

> Pursuant to the Subpoena, the Guilford County Sheriff's Department produced approximately 250 pages of records concerning [Plaintiff]. The [pro bono attorney] reviewed those records to identify medical providers, and

2

forwarded those records to [Plaintiff]. [Plaintiff ] identified two providers who she believe[d] failed to provide proper care.

(Docket Entry 16 at 1-2.)

Plaintiff thereafter filed an amended complaint "identif[ying] the proper [d]efendants as Tracy Norwood and Wasi Haq" (each, a "Defendant," and collectively, the "Defendants") (Docket Entry 20 at 2). (See Docket Entry 20-1 (the "Second Amended Complaint") at 1-2.)[3] Per the Second Amended Complaint:

Tracy Norwood and Wasi Haq each served as a "Health [Care] Provider at [the] County Jail." (Id. at 2; see also id. (identifying, as Defendants' employer, "Greensboro . . . Detention Center the Health Care they Hired").) They violated Plaintiff's "8th Amendment" right to be free from "cruel and unusual punishment" (id. at 3) at the "Greensboro County Jail" in "Oct[ober 20]19" (id. at 4). More specifically:

> Norwood and Haq knew that [Plaintiff] was a diabetic and that the orders the Hand Doctor from the Hospital sent should not be[] changed. [Plaintiff's] hand was suppose[d] to be washed & changed 2x daily and the order was changed to every 48 hours which wasn't being

---

3 Plaintiff prepared the Second Amended Complaint without the assistance of counsel. (See id. at 11; see also, e.g., Docket Entry 17 at 1-2 (discussing Plaintiff's completion of the "Pro Se 14 (Rev 12/16) Complaint for Violation of Civil Rights (Prisoner)" form "for her proposed Amended Complaint naming the correct defendants"); Docket Entry 19 at 1-2 (same).) Following service of the Second Amended Complaint on Defendants (see Docket Entries 22-23), the pro bono attorney withdrew from representation (see Text Order dated Feb. 15, 2023; see also Docket Entry 32 at 1-2 (explaining that "the [attorney's] tasks ha[d] been completed")).

3

change[d] then. And they would put refused every time they didn't change it and nobody ever ask[ed] why.

(Id. at 4.) The Second Amended Complaint further elaborated:

[Plaintiff] came to [the] Greensboro Jail with 4 stitches in [her] finger due to a fight. The Hand Doctor from [the] hospital sent strict orders [to] wash and change [her] bandages twice daily because [she is] a diabetic, and to continue to take [th]e rest of [her] antibiotics[,] which in [the] Records states [her] infection was clearing up when [she] left [the] hospital. [On]ce [she] return[ed] to jail all orders w[ere] changed as well as medications, [at] which [point her] hand [sta]rted tak[ing] a turn for the worse. They w[ere]n't changing [her] bandages, and [were] saying [she] refuse[d]. Infection started setting in and [she] had to go back to [the] hospital in surgery. [The s]ame thing [ha]ppen[ed] when [she] got back to [the] jail. [The n]ext time [her] finger couldn't be saved.

       *****

[Plaintiff] lost [her] finger due to neglect. [She] was suppose[d] to [have] been checked on daily. Bandages & hand changed twice a day due to the fact [she] was a diabetic, they didn't d[o] what [the] doctor said [to] d[o, her] medication was changed. The doctor at [the] hospital stated in Records that before leaving [the] hospital [the] infection was clearing up & that once back to [the] jail he didn't know what happened why [the] infection continue[d] to occur. [Plaintiff] stayed in pain daily[, she] even decided to kill [her]self because [she] couldn't take it no more.

       *****

[Plaintiff] ask[s] the Court[] to grant [her] 3 million dollars for all [her] pain and suffering, [as well as] th[e] fact that [she] can no longer use but 2 fingers [on] her hand due to damages of infection. . . . [She is] no longer able to work because [she is] right handed and [she] can't use [her] hand anymore due to nerve damages.

(Id. at 5 (emphasis in original); see also id. at 8 ("When the nurse would come to pass medication [Plaintiff] would [ask] w[as]

4

there anybody coming to clean and change [her] bandages, [and she] was told answers like, 'if we have time' (or) 'I'll pass it to next chief[,'] which [Plaintiff] wouldn't get it done, [Plaintiff] was being put down as Refuse on medical Records which [she] never Refused!!").)

Defendants responded to the Second Amended Complaint by filing substantively identical answers. (See Docket Entry 26 ("Norwood's Answer"); Docket Entry 27 ("Haq's Answer") (collectively, the "Answers").) Norwood's Answer responds to Plaintiff's "'Statement of Claim'" as follows: "The allegations contained within this section of the Second Amended Complaint do not refer to Norwood. As such, no response is required. In the event a response is required, Norwood denies the allegations on pages 4-5 of the Second Amended Complaint." (Docket Entry 26 at 2 (emphasis omitted).) Haq's Answer likewise responds to the "'Statement of Claim'" with: "The allegations contained within this section of the Second Amended Complaint do not refer to Dr. Haq. As such, no response is required. In the event a response is required, Dr. Haq denies the allegations on pages 4-5 of the Second Amended Complaint." (Docket Entry 27 at 2 (emphasis omitted).) The Answers further "den[y] the allegations that [the relevant Defendant] 'knew that [Plaintiff] was a Diabetic and that the orders the hand doctor from the hospital send [sic] 2x [sic] daily and the order was changed to every 48 hours which wasn't being change then [sic]. And they

5

would put refused everytime [sic] they didn't change it [sic] and nobody never ask why.'" (Docket Entry 26 at 1-2 (certain brackets in original); Docket Entry 27 at 1-2 (certain brackets in original).)

Conversely, for the allegations regarding Plaintiff's injuries, the Answers state: "[The relevant Defendant] lacks information to respond to Plaintiff's alleged injuries and the same are therefore denied." (Docket Entry 26 at 2; Docket Entry 27 at 2.) The Answers similarly deny Plaintiff's allegations regarding her exhaustion of administrative remedies on the grounds that the relevant "[Defendant] is without knowledge or information sufficient to form a belief as to the truth of the allegations in Section VII and therefore denies the same." (Docket Entry 26 at 2; Docket Entry 27 at 2.) The Answers provide the same denial for lack of "knowledge or information" regarding Plaintiff's previous lawsuit allegations. (Docket Entry 26 at 3; Docket Entry 27 at 3.)

In addition to filing their Answers, Defendants moved to dismiss the Second Amended Complaint "pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" (the "Rules") (Docket Entry 28 at 1; Docket Entry 30 at 1).[4] Plaintiff failed to respond to

---

4    Although filed separately, the Motions and supporting memoranda appear substantively identical, save for one comma and the name/title of the relevant Defendant. (See Docket Entries 28-31.)

the Motions. (See Docket Entries dated Feb. 10, 2023, to present.)[5]

**DISCUSSION**

**I. Relevant Standards**

**A. Rule 12(b)(6) Standards**

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).[6] Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted);

_____

5  This "[C]ourt nevertheless has an obligation to review the [M]otions to ensure that dismissal is proper." Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014).

6  Thus, "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than through a Rule 12(b)(6) motion. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002).

7

but see Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[7] This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Twombly, 550 U.S. at 555 (explaining that, although a complaint "does not need detailed factual allegations," merely providing "a formulaic recitation of the elements of a cause of action will not do," as the complaint must afford "the defendant fair notice of what the claim is and the grounds upon which it rests" (internal quotation marks and ellipsis omitted)). "At bottom, determining whether a

---

    7  In ruling on a Rule 12(b)(6) motion, "a court evaluates the
complaint in its entirety, as well as documents attached or
incorporated into the complaint." E.I. du Pont, 637 F.3d at 448.
Additionally, the Court "may properly take judicial notice of
matters of public record." Philips v. Pitt Cnty. Mem'l Hosp., 572
F.3d 176, 180 (4th Cir. 2009). "[T]he most frequent use of
judicial notice of ascertainable facts is in noticing the content
of court records." Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236,
1239 (4th Cir. 1989) (internal quotation marks omitted).

complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 679).

## B. Deliberate Indifference Standards

"[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his . . . medical care[,] . . . it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause [of the Fourteenth Amendment]." <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 200 (1989).[8] "Thus, deliberate indifference to the serious medical needs of a pretrial detainee violates the [D]ue [P]rocess [C]lause," <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 575 (4th Cir. 2001), and "deliberate indifference to serious medical needs of [convicted] prisoners" violates "the Eighth Amendment," <u>Estelle v. Gamble</u>, 429 U.S. 97,

_____

8    Plaintiff qualified as a pretrial detainee for at least some of her incarceration at the Guilford County Jail. <u>See</u> <u>United States v. Tara Jean Vaughn</u>, No. 1:14cr88, Docket Entries dated Sept. 26, 2019, to Nov. 27, 2019 (M.D.N.C.). Courts evaluate pretrial detainees' conditions of confinement in state custody under the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (4th Cir. 1988).

104 (1976); see also id. at 104-05 ("This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." (footnotes omitted)).

Under that standard, Plaintiff must show that Defendants "acted with 'deliberate indifference' (subjective) to [her] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citing Estelle, 429 U.S. at 104).[9] A medical

---

9  By holding that an objective standard of reasonableness applies to a pretrial detainee's excessive force claim under the Due Process Clause of the Fourteenth Amendment, the United States Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. 389 (2015), calls into question whether an objective reasonableness standard applies to a pretrial detainee's claim that her medical treatment violated the Fourteenth Amendment's Due Process Clause. See, e.g., Darnell v. Pineiro, 849 F.3d 17, 30, 33-36 (2d Cir. 2017) ("conclud[ing] that the Supreme Court's decision in Kingsley altered the standard for deliberate indifference claims under the Due Process Clause," overruling decision applying subjective standard to medical deliberate indifference claim, and holding that, in light of Kingsley, an objective standard of deliberate indifference applies in Due Process cases). The Fourth Circuit has not yet considered whether Kingsley's reasoning extends to medical deliberate indifference claims. See Mays v. Sprinkle, 992 F.3d 295, 301 (4th Cir. 2021) ("We had not decided whether Kingsley's excessive-force-claim rationale extended to deliberate-indifference claims by the time Mays[, a pretrial detainee,] died [in 2016]. And we still have not. Both before and after Mays's death, we said a pretrial-detainee-medical-deliberate-indifference claim required both an objectively serious medical condition and subjective knowledge of the condition and the excessive risk posed from inaction."); see also id. at 301 n.4 (discussing circuit split on post-Kingsley pretrial detainee medical claims) (collecting cases).

need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted). A defendant displays deliberate indifference where he possesses knowledge of the risk of harm to an inmate and knows that "his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Id. (emphasis and internal quotation marks omitted); see also Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" (brackets in original) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994))).

"[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. "It requires

_____

However, the Court need not resolve whether an objective standard of reasonableness applies to Plaintiff's claims, or whether Plaintiff qualified as a pretrial detainee during the events at issue in this matter, for (as discussed below) Plaintiff's claims survive Defendants' Motions even under the Eighth Amendment's deliberate indifference standard. See, e.g., Nam Dang by & through Vina Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (declining to consider Kingsley's implications for deliberate indifference claim because, inter alia, "regardless of whether Kingsley could be construed to have affected the standard for pretrial detainees' claims involving inadequate medical treatment due to deliberate indifference, whatever any resulting standard might be, it could not affect [the plaintiff's] case").

11

that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). A plaintiff can satisfy this standard by showing "'that a [defendant] knew of a substantial risk from the very fact that the risk was obvious.'" Scinto, 841 F.3d at 226 (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)).

A plaintiff can also establish "a prima facie case of deliberate indifference" where "'a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it.'" Id. (brackets and ellipsis in original) (quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)). In addition, "'[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs.'" Id. (brackets in original) (quoting Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837).

## II. Analysis

### A. Section 1983 Challenge

As an initial matter, Defendants maintain that "Plaintiff's Second Amended Complaint fails as a matter of law through her

12

improper pleading of a § 1983 action, specifically her failure to show [each Defendant] was acting under color of state law during his alleged actions and/or inactions." (Docket Entry 29 at 4; Docket Entry 31 at 4.) This argument lacks merit.

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted). Thus, "[t]o prevail under 42 U.S.C. § 1983, a plaintiff must show, first, that [s]he was deprived of a right secured by the constitution or laws of the United States, and second, that the defendant acted under color of state law." Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). "The 'under color of state law' element of a § 1983 claim requires that 'the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State.'" Id. (brackets in original) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West, 487 U.S. at 50; see also Lugar, 457 U.S. at 935 n.18 (observing that "state employment is generally sufficient to render the defendant a state actor"). As for "[t]he 'under color of state law' requirement . . . where the defendant is a private party not

13

employed by the state," the Fourth Circuit "has identified three situations in which particular conduct by a private entity constitutes 'state action.'" Conner, 42 F.3d at 223.

Relevant here, "a private party acts under color of state law where the private entity has exercised powers that are traditionally the exclusive prerogative of the state." Id. at 224 (internal quotation marks omitted). "The Supreme Court made clear in *West* that the provision of medical services to prison inmates is traditionally the exclusive prerogative of the state." Id. "The provision of medical services to prison inmates is the state's exclusive prerogative for the same reason it is its constitutional duty: a prisoner has no alternative means of acquiring medical care other than those provided by the state." Id.; see also Estelle, 429 U.S. at 103 ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.").

Here, Plaintiff alleges that Defendants served as medical providers at the county jail during her incarceration there. (See, e.g., Docket Entry 20-1 at 2 (identifying each Defendant as a "Health [Care] Provider at County Jail" and their employer as "Greensboro . . . Detention Center the Health Care they Hired").) Plaintiff further alleges that, knowing she "was a diabetic and that the orders the Hand Doctor from the Hospital sent should not be[] changed," Defendants nevertheless refused to follow those

14

orders, changing her medication and wound care directives from twice daily to once every 48 hours and interfering with her ability "to continue to take [th]e rest of [her] antibiotics." (Id. at 4-5.) Plaintiff further asserts that, notwithstanding their own new directives, Defendants failed to provide any wound care, all of which caused infection to set in, requiring surgery, and, after a repeat of the same interference and failure to provide wound care upon her return to the jail, culminated in the amputation of Plaintiff's injured finger and permanent damage to Plaintiff's hand from infection. (See id. at 4-5.) These allegations satisfy the "under color of state law" requirement. See Conner, 42 F.3d at 223-24.

The Court should therefore reject Defendants' Section 1983 challenge. See Whitten v. Atyia, No. 7:17cv465, 2019 WL 1430005, at *8 (W.D. Va. Mar. 29, 2019) ("It is well established that a state-employed physician who provides medical services to inmates is a state actor, whether he works directly for the state or under contract."), aff'd, 776 F. App'x 817 (4th Cir. 2019).

**B. Sufficiency Challenge**

Next, Defendants maintain that "Plaintiff failed to specify which of [the relevant Defendant's] actions caused her alleged injury" and that "Plaintiff failed to explain how [each Defendant] was responsible for her medical care." (Docket Entry 29 at 5, 7 (emphasis omitted); Docket Entry 31 at 5, 7 (emphasis omitted).)

15

More specifically, Defendants assert that Plaintiff's allegations impermissibly fail to differentiate between them, "mak[ing] it impossible for [each Defendant] to ascertain what particular unconstitutional acts he is alleged to have committed. This failure prevents [each Defendant] from adequately preparing his defense and is grounds to dismiss Plaintiff's Second Amended Complaint." (Docket Entry 29 at 6; Docket Entry 31 at 6.) Defendants further allege that Plaintiff failed to "show[] that [they] w[ere] in a position to respond to Plaintiff's serious need for medical care." (Docket Entry 29 at 7; Docket Entry 31 at 7.) Per Defendants, "Plaintiff's failure to allege [Defendants] had any responsibility in providing her medical care results in her inability to establish a claim of deliberate indifference." (Docket Entry 29 at 7; Docket Entry 31 at 7.) These arguments miss the mark.

To begin, no rule inexorably prohibits "mak[ing] allegations collectively against 'Defendants.'" Langford v. Joyner, 62 F.4th 122, 126 (4th Cir. 2023) ("We do not categorically foreclose the possibility that a complaint that makes allegations collectively against 'Defendants' may sometimes survive a motion to dismiss. After all, determining whether a complaint states a plausible claim for relief is a 'context-specific task.' . . . We simply hold

16

that, as pled, this complaint falls short.").[10]  Moreover, the Second Amended Complaint's allegations go farther than Defendants acknowledge.  (See Docket Entry 20-1 at 2-8.)  Particularly when construed liberally, as required with a pro se pleading, the Second Amended Complaint asserts that Defendants, the medical providers at the Guilford County Jail, interfered with provision of Plaintiff's health care and failed to treat her obvious serious medical need.[11]

---

10  Notably, unlike here, a lawyer prepared the complaint in Langford, see id. at 123, which targeted far more than the two prison workers named here, and "did not identify who the [d]efendants [we]re beyond being employees at [the prison], in what capacity each [d]efendant interacted with [the plaintiff], or how (or even if) each [d]efendant was responsible for [the plaintiff's] medical treatment," id. at 125; see also id. at 126 (explaining that "is not reasonable to infer liability against each [d]efendant based on the facts alleged," where, inter alia, "the complaint is otherwise devoid of allegations that these particular [d]efendants were aware of [the plaintiff's] poor health or the risks of failing to treat him").  See generally Langford v. Joyner, No. 5:21cv811, Docket Entry 1 (D.S.C. Mar. 19, 2021) (asserting, with no further identification or differentiation among defendants, that, "[a]t all times relevant and, on information and belief, [d]efendants, Hector Joyner, Warden, FCI Estill, FNU, LNU, Assistant Health Services Administrator FCI Estill, Ms. FNU Boatright, Ms. FNU Lloyd, Mr. FNU Midock, John Doe and Richard Roe, were residents of the District of South Carolina, employed by FCI Estill which is located in the District of South Carolina" and, in complaint's sole reference to any "[d]efendants" in "Factual Allegations" that, "[f]rom the time of his return to FCI Estill on March 20, 2018, until his admission to HRMC on March 28, 2018 for emergency surgery, Langford continually brought to the attention of the [d]efendants, and other members of FCI Estill staff, whose identities are unknown, that his condition was worsening, that he was suffering acute and excruciating pain and feared he was dying" (emphasis omitted)).

11  In this regard, as reflected above, the Second Amended Complaint alleges that, during Plaintiff's incarceration at the Guilford County Jail in October 2019, when Plaintiff, a known diabetic, arrived with four stitches in her finger and "strict orders" from the hospital's "Hand Doctor" regarding necessary care

17

Finally, the Answers belie Defendants' contention that the Second Amended Complaint's allegations "make[] it impossible for [each Defendant] to ascertain what particular unconstitutional acts he is alleged to have committed" and "prevents [him] from adequately preparing his defense." (Docket Entry 29 at 6; Docket Entry 31 at 6.) Unlike allegations (regarding Plaintiff's injuries, exhaustion of administrative remedies, and previous lawsuits) that they deny for asserted "lack[ of] information to respond" and/or an absence of "knowledge or information sufficient to form a belief as to the truth of the allegations," each of the Answers outright and without qualification "denies the allegations" regarding the underlying events at issue in this litigation. (Docket Entry 26 at 1-3; Docket Entry 27 at 1-3.)

Accordingly, the Court should reject Defendants' sufficiency challenges.

---

of her infected finger, (i) Defendants, the medical providers at the Guilford County Jail, each disregarded instructions from the outside specialist regarding her wound care and antibiotics regime and (ii) Defendants each failed to provide wound care, in contravention of their own orders regarding such care, (iii) causing an infection — which had been "clearing up" before she left the hospital — to "set[] in," (iv) causing severe pain and necessitating surgery, yet (v), upon her return to the jail after her hospitalization, each Defendant again disregarded the Hand Doctor's treatment instructions and failed to provide medical care, (vi) causing more pain and the amputation of her finger due to infection and other permanent damage to her hand, including nerve damage, such that she can now only use two fingers on that hand. (See id. at 2-5.)

## C. Causal Challenge

Finally, Defendants assert that "Plaintiff failed to explain how [their] alleged actions caused her finger to be amputated." (Docket Entry 29 at 7 (emphasis omitted); Docket Entry 31 at 7 (emphasis omitted).)  In this regard, Defendants argue (in full):

> Assuming Plaintiff has facially plead a claim of deliberate indifference, which is denied, her Second Amended Complaint must be dismissed as a matter of law because it fails to explain how [Defendants'] alleged actions and/or inactions caused her finger to be amputated.

> Plaintiff's allegations state she had stitches in her finger which, when she left the hospital, was still infected and "clearing up." [D.E. 20-1, p. 5].  Further, Plaintiff admitted she was a diabetic which may complicate her healing process.  [D.E. 20-1, p. 5]. Finally, Plaintiff admitted the doctor who treated her at the hospital didn't "know what happened why the infection continue to occur."  [D.E. 20-1, p. 5].  These statements, when taken as true, establish (1) Plaintiff's finger was infected when she left the hospital; (2) Plaintiff was a diabetic which could impact her healing process; and (3) the medical professional who reviewed her finger after the fact did not offer a medical opinion as to why the infection continued in her finger.  These facts, taken as true, show Plaintiff is unable to establish [Defendants'] actions and/or inactions, rather than these underlying issues, caused her injuries.

(Docket Entry 29 at 7-8; Docket Entry 31 at 7-8.)  This argument fails to justify dismissal.

Particularly with all reasonable inferences drawn and construed in Plaintiff's favor (as required at this juncture), the Second Amended Complaint's allegations regarding Plaintiff's finger and the Hand Doctor's comments reflect the view that, if Defendants

had followed (rather than ignored and altered) the Hand Doctor's orders, Plaintiff's infected finger would have healed; however, Defendants' interference and refusal to treat Plaintiff's injury instead caused the infection to spread, subjecting Plaintiff to severe pain and permanently damaging Plaintiff's hand. (See Docket Entry 20-1 at 2-5; see also Docket Entry 6 at 12 (elaborating in earlier complaint that, after same interference and neglect upon her return to the jail, "[Plaintiff's] finger started hurting [with] really bad pain up to [her] elbow," and when a nurse finally "took the bandages off [Plaintiff's] whole finger was black," resulting in Plaintiff's return "to this same Hand Doctor which he informed [Plaintiff] that he did everything he could but due to it not being clean[ed] and changed like he ordered he will now have to take [her] finger").)

In addition, "[c]ommon sense dictates that wounds must be kept clean to prevent or treat infections, and that regular bandage changes and care would help keep a wound clean, especially in a prison environment." Cruz v. Cunningham, No. 3:18-cv-1321, 2022 WL 1555371, at *16 (S.D. Ill. May 17, 2022). Moreover, "[the Court] need not check [its] common sense at the door in analyzing [Plaintiff's] injury" and thus can recognize "that a delay in providing antibiotics will necessarily delay the curing of the infection or possibly lead to its spread." Gil v. Reed, 535 F.3d 551, 556 (7th Cir. 2008) (internal quotation marks omitted)

20

(reversing ruling that the plaintiff "had not shown that he was harmed by [a defendant's] refusal to fill his prescription for antibiotics" and observing, "the very fact that prison medical staff prescribed him an antibiotic is evidence permitting the inference that the drug was medically necessary"). Further, "[i]t is within a layperson's purview to know that[,] when a serious infection at the site of a surgical wound is diagnosed and an antibiotic is prescribed, failure to supply or delay in supplying the antibiotic can result in unnecessary pain, discomfort and a spreading of the infection." Gil v. Reed, 381 F.3d 649, 661 (7th Cir. 2004). Finally, "[e]ven a lay person understands that they need to complete a prescribed course of antibiotics." Early v. Rhoads, No. 2:16cv85, 2018 WL 8061739, at *3 (S.D. Ind. Dec. 14, 2018).

Accordingly, the Second Amended Complaint plausibly alleges that Defendants' refusal to follow the Hand Doctor's orders, failure to clean Plaintiff's injury and change her bandages, and interference with her prescribed course of antibiotics caused Plaintiff unnecessary pain and suffering and enabled the spread of her infection, necessitating the amputation of her finger and causing permanent damage to her hand. The Court should therefore reject Defendants' causal argument.

21

## <u>CONCLUSION</u>

Defendants' arguments do not warrant dismissal of the Second Amended Complaint for failure to state a claim.

**IT IS THEREFORE RECOMMENDED** that the Motions (Docket Entries 28, 30) be denied.

This 25th day of April, 2023.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

22